## LARUSSO & CONWAY
## ATTORNEYS AT LAW
## 300 OLD COUNTRY ROAD,
## SUITE 341
## MINEOLA, NEW YORK  11501
Telephone No. (516) 248-3520
Fax No. (516) 248-3522

November 2, 2007

Hon. Sandra J. Feuerstein
United States District Judge
United States District Court
100 Federal Plaza
Central Islip, N.Y. 11722

      Re:  United States v. Jeffrey Francois
           Criminal Docket No. CR-06-006794(SJF)

Dear Judge Feuerstein:

      Defendant Jeffrey Francois ("Jeffrey" or "Francois") respectfully submits this letter in connection with his sentencing, which is currently scheduled for November 8, 2007 at 10:00 A.M.  As demonstrated in more detail below, we respectfully submit that the advisory guideline range in this case is unjustly harsh and that a sentence to the mandatory minimum of 60 months is reasonable in this case. Our motion is premised upon (1) the attached medical professional opinions which conclude that Jeffrey does not pose any danger to the community; (2) Jeffrey has already spent 21 months "imprisonment" on home confinement since the arrest; (3) Jeffrey's life and family circumstances, including his lack of prior record and the lack of danger he poses to the community as a result of these charges, and (4) the nature and circumstances of this case. Accordingly, we respectfully requests that the Court sentence him to 60 months incarceration, which is the statutory minimum sentence applicable to his conduct.

I. **BACKGROUND**

As the Court is well aware, Francois pleaded guilty, pursuant to a plea agreement with the government, to Count Two of a sixteen-count indictment. That count charged Francois with receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A). In sum, the basis for that charge, as well as the remaining counts of the indictment, is that Francois received various images of child pornography on his computer.

The Probation Department has prepared a Pre-Sentence Report ("PSR") which correctly sets forth Jeffrey's adjusted offense level as 33, with a final offense level of 30 based upon a three level reduction for his timely acceptance of responsibility. As part of the calculations Jeffrey received a five level enhancement pursuant to Section 2G2.2(b)(7)(d) based upon his possession of 109 still images and 53 video clips depicting pornographic images of children. We do not dispute the legality of the guideline calculations, however, because the advisory sentencing guidelines and relevant case law provide that each individual video clip is considered to count as 75 images, the PSR holds Mr. Francois responsible for possession of 4,084 images of child pornography as opposed to 162 images found. As set forth in further detail in section 3(d), we respectfully submit that the number of images, which provides for an increase of five levels, seriously overstates Mr. Francois' involvement in this offense and provides for a harsher sentence that what justice in this case calls for. We respectfully request the Court take this into consideration when determining the proper and just sentence in this case.

II **DISCUSSION**

As the court is well aware, United States v. Booker 543 U.S. 220 (2005) restored district courts' ability to fashion a sentence tailored to the individual circumstances of the case by requiring courts to consider all of the factors set forth in Title 18, U.S.C Section 3553(a). Indeed, under Title 18 U.S.C. §3553(a) courts are *required* to sentence below the range if such a sentence would be sufficient to achieve the purpose of punishment. Because the sentencing guidelines are merely advisory in the wake of Booker, the Court may consider all of the factors set forth in 18 U.S.C. § 3553(a) and sentence the

2

defendant to a term of incarceration less than the advisory guidelines. Among the factors in 18 U.S.C. § 3553 are (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (B) to afford adequate deterrence to criminal conduct, and (C) to protect the public from further crimes of the defendant. In addition to the factors set forth in 18 U.S.C. Section 3553, 18 U.S.C. § 3661 provides that "no limitation shall be placed on the information concerning the background, character and conduct of a person convicted of an offense which a court may receive for the purpose of imposing an appropriate sentence."

Here, we submit that application of those factors to this case warrants a sentence below the advisory guideline range, and respectfully submits that a sentence to the statutory minimum of 60 months is a fair and reasonable period of incarceration.

### III. **FACTORS FAVORING A REASONABLE SENTENCE OF 60 MONTHS**

(A). The Professional Opinions from Two Psychiatrists that Jeffrey Poses No Danger To The Community.

On February 6, 2006, Jeffrey was arrested on the instant matter. He was released on bail and a condition of bail was to receive counseling as mandated by the Pre-trial Services Office. Shortly thereafter, Jeffrey was directed to the Forensic Evaluation and Counseling Services in Mineola, New York. Jeffrey has been in counseling with them for almost 20 months now. His therapist, Certified Social Worker David Gavurin, has provided periodic updates (all positive) to the court while Jeffrey has been on bail. As set forth in paragraph 44 of the PSR, Mr. Gavurin, in a letter dated September 13, 2007 expressed his "firm professional opinion" that Mr. Francois does not constitute a threat of any type to the community." PSR at ¶ 44. Furthermore, Mr. Gavurin recognized that Mr. Francois has no history of anti-social personality or deviant sexual tendencies and in fact, to the contrary, Mr. Francois impressed Social Worker Gavurin as "mature" and "possessing a sincere desire to engage in treatment." As the enclosed letter from Social Worker Gavurin indicates, Mr. Francois does not "constitute any threat of any type to the

3

community." A copy of Mr. Guvurin's September 13, 2007 letter, as well as one dated June 27, 2006 is attached hereto as Exhibits 1 and 2.

In connection with his plea and in preparation of the PSR, Jeffrey was referred to the New York Center for Neuropsychology & Forensic Behavioral Science[1]. In a report dated May 10, 2007 the findings of Mr. Gavurin above are corroborated by that of forensic psychologist Dr. N.G. Berill and Assistant Director Jennifer McCarthy. Dr. Berill and Ms. McCarthy have advised that Mr. Francois does not appear to have any antisocial personality disorder. PSR at ¶ 49. More importantly, Dr. Berill and Ms. McCarthy observed that Mr. Francois does not appear to be the type of person who is attracted to minors. See Berill Report pg. 11, attached hereto as Exhibit 3. Furthermore, the objective results of the *Abel Assessment* exam suggest that Mr. Francois "does not present with the types of rationalizations used frequently by individuals who are sexually attracted to minors." See Berill Report pg 10-11. Also Mr. Francois "did not present as someone who is attracted to minors per se." Lastly, the result of the evaluation "did not support the presence of pervasive character pathology." The report concluded by "recommending that Jeffrey be viewed as a low risk with regard to his level of dangerousness to the community." PSR at ¶ 51.

The conclusions of these professionals that Mr. Francois is not or does not possess a danger the community is buttressed by the fact that Mr. Francois has never had allegations of contact with minors and does not exhibit signs of danger or risk to others. Furthermore, there is no indication in the government's investigation that Jeffrey traded images with others[2] or that he participated in any chat rooms commonly associated with individuals who represent a danger minors. These factors, coupled with continued counseling and the loving support from his family throughout his life, which will undoubtedly continue upon

---

[1] The visit to Dr. N.G Berill and Assistant Director Jennifer McCarthy of the New York Center for Neuropsycholoy and Forensic Behavioral Science was required for a sex offender evaluation and was referred for the evaluation by Probation Officer Andrea Testa.

[2] As set forth in the complaint for an arrest warrant in this case, the police were alerted to Jeffrey by way of a German National Police Officer in Germany accessing Jeffrey's computer and downloading various pornographic materials.

the end of his incarceration, make him an excellent candidate for a sentence substantially below that of the advisory guideline range.

(B) Jeffrey Has Spent More Than 21 Months On Home Confinement Since His Arrest.

As set forth above Jeffrey has been on home detention with electronic monitoring for the past 21 months.[3] He has been fully compliant with all of his pre-trial conditions, and has not endangered any segment of the community in any way during his release. His house arrest allows him to only leave the home for the standard, employment, health and religious reasons. Since that time he has essentially been in a virtual prison with an electronic monitoring device, no access to the outside world such as friends and family members who he does not reside with, and no permission to go anywhere but his two jobs in Westbury, New York.  Since Mr. Francois has been on home confinement he has made each and every court date, abided by every term and restriction set forth by pre trial services and has also gone to therapy and has managed to still hold two jobs in the process. Attached hereto is a letter from Pre-trial Services Officer Arthur Bobyak who states that Jeffrey has been a model citizen and has been fully compliant with his house arrest. As set forth in the PSR, Jeffrey has, since his arrest worked two different jobs. Since Mr. Francois has posed no danger to the community for the past 21 months he has been on home confinement, the Court should be confident that he will not pose any greater danger if released from jail after 60 months incarceration as opposed to 97 months. We ask the Court to consider the 21 month term that Mr. Francois has been on home confinement when fashioning a sentence, and arrive at the mandatory minimum sentence of 60 months incarceration.

---

[3] Mr. Francois was remanded for four days when he was falsely accused that he had inappropriate contact with a minor. PSR at p. 3. It should be noted that Jeffrey was falsely accused because the accuser later admitted that the story was made up. Despite that Jeffrey was rearrested and spent four days incarceration while the accuser has never been charged with a crime.

5

(C) <u>Jeffrey's History and Family Circumstances</u>

      Jeffrey is a 28 year male, born on February 18, 1979 to his parents Jean and Nesla Francois. His father, a New York City Transit Engineer and his mother a licensed Registered Nurse are still together and reside with Jeffrey in Westbury, New York. They are the epitome of the hard working blue collar working family that is the backbone of our nation. Jeffrey enjoys very close ties with his parents as well as his sister who is first year medical student at Morehouse school of medicine in Atlanta Georgia. As the Court can see from the enclosed letters from his parents, his sister and other relatives, they all paint a picture of a loving, bright hard working man who shows absolutely no tendencies of abnormal, antisocial or criminal behavior. Letters from Jeffrey's parents, sister and uncle are attached hereto as exhibits 4,5 and 6.

      As the PSR indicates, Jeffrey's mother reported that the defendant is a "heterosexual…. and a very lovely, family orientated young man." Furthermore, a discussion with Jeffrey's sister Jennifer Francois characterized him as "heterosexual, and opined that he posed no threat to children or the community, advising that his interactions with children have always been normal interactions. She characterized Jeffrey as a hard working, dependable individual who gets along with anyone." When asked about Jeffrey's instance offense she stated that "he was searching the internet and came across child pornography and "it was a stupid mistake, you can't turn away from it, it doesn't fit his character."

      Jeffrey has been on home confinement since his arrest and surrender on February 6, 2006, some 21 months ago. Since that time, he has been employed as an order packer for Corporate Coffee Systems and is also employed part time as a caterer at Carlyle on the Green. Up until his arrest in February of 2006, Mr. Francois was employed as a license Emergency Medical Technician ("EMT") and prior to receiving his EMT license, he worked numerous other jobs, always earning a living and supporting himself since the age of 17 years old. The PSR sets forth in detail the various jobs Jeffrey has had from 1997 to the present. Furthermore, as verified in the PSR Jeffrey has filed tax returns for the past five years. Additionally, Jeffrey graduated from St. Dominic's high school in Oyster Bay and also received an Associate's Degree in digital technology

6

from Nassau Community College. It is Jeffrey's desire to one day own his own business. Attached hereto as Exhibit 7 is a letter from Jeffrey himself which describes his remorse as well as setting forth other factors (death of his best friend) relevant for sentencing consideration. This letter truly captures the true character of the man. Lastly, other than the current offense, Mr. Francois had never been arrested or involved with any form of criminal activity.

(D) Nature and Circumstances Require a Sentence below the <u>Advisory Guideline Range</u>

Congress and the United States Sentencing Commission have seen fit, with absolutely justifiable reasons, to institute harsh penalties in cases dealing with child pornography. This letter motion in no way shape or form takes issue with the nature of this crime, the seriousness of this crime and the devastation it has on our society, specifically young children who are the victims. Furthermore, in many cases the harsh penalties that may result are justified based on the actions of the defendant involved. However, as with everything in life the system is not perfect and on occasions there are individual cases that do not fit into the category of cases the members of Congress and the United States Sentencing Commission envisioned when fashioning the severe penalties for those who engage in these crimes. We respectfully submit this is such a case.

While Jeffrey's actions were certainly wrong and criminal, and while we completely understand the argument that anyone involved in this type behavior contributes to the overall problem, we submit that this case should be viewed in isolation based on its own facts and not judged in context to the overall problem of child pornography. We do not request that Jeffrey be rewarded for his limited participation, but ask that his facts and circumstances be viewed in contrast to his actions and not those of other criminal pedophiles. Again, without condoning his behavior, Jeffrey was alone in his own house in his own room when he chose to view these materials. There is no evidence that he traded materials with others and certainly the medical opinions stated above state that he possesses no traits of a pedophile nor do they think he poses a danger to children. As stated above his actions came to light following an unknown individual's access to his

computer files using the KaZaA file sharing program. This program allows for the download and/or sharing of files and music, whereby members of the program can elect to either share images and music with others who are online or elect to have their files marked private so that others may not have access to them. Jeffrey was unaware that by downloading pornographic materials that others with a similar program could gain access and copy his files.

Unlike the vast majority of child pornography cases ---- even possession of child pornography cases ---- that come before this Court, Jeffrey's involvement did not entail or enable users to have illicit conversations, Internet "chats" or any other untoward contact with minors. In fact, as your honor can see from Jeffrey's educational degree, he went onto KaZaA for purposes of music and digital pictures for entertainment.  It was only after months of using the program did it escalate to a level of "curiosity" in downloading child pornography in his own home.

Because the type of offense Jeffrey is charged with does not warrant any type of "safety valve" exception, Jeffrey is facing a significant period of incarceration as well as a mandatory minimum five year sentence.  Given Jeffrey's lack of criminal history, lack of potential towards recidivism and extensive family support, a sentence below the Advisory Guidelines range is clearly warranted. Indeed, had this case involved allegations of possession with intent to distribute narcotics, rather than possession of child pornography, it is beyond doubt that Jeffrey would have received "safety valve" treatment that would enable the Court to sentence Jeffrey below the otherwise-applicable statutory minimum.[4]  The "safety-valve" recognizes that leniency is appropriate in cases where the defendant accepts responsibility and has no prior criminal history or potential for violence.  While Jeffrey is not asking the Court to sentence him below the statutory minimum, he nevertheless submits that the same circumstances that would warrant leniency in narcotics

---

[4] In addition to the ability to sentence below the mandatory minimum in safety valve eligible cases, most defendants also receive a two level reduction from the applicable guideline range.  Furthermore, in drug cases where defendants do not receive an enhancement for role adjustment they are also entitled to a reduced base offense level which corresponds to a lower sentencing range.

8

cases exist here to warrant a departure to the mandatory minimum.

The PSR demonstrates that Mr. Francois is a person of good character who does not pose any danger to children or adults. Furthermore, the PSR indicates that Mr. Francois' actions that led to his plea of guilty are the only example of criminal conduct in an otherwise law-abiding life.

Lastly, in looking at the PSR, Jeffrey is charged and plead guilty to receiving in excess of 4,000 images of child pornography.  However, pursuant to the guidelines since Jeffrey possessed 53 video clips and 109 still images, the amount in total for guideline calculation actually amounts to over 4,000.  However, the time period in which Jeffrey downloaded these images is worth noting. The PSR indicates that Jeffrey downloaded these images over a period of 18 months stating that he would spend a "couple of hours per week at the computer."  A couple of hours a week over a span of 18 months, downloading 109 images and 53 video clips, amounts to 162 total downloads.  If you were to divide 162 total downloads over the span of 18 months, the amount of downloads are less than 2 images or videos per week.  This amount exemplifies the fact that Jeffrey is not a man who has a sexual desire towards minors or some sort of a fetish that one may normally see with child pornography, it is a person who was curious and that curiosity got the best of him. We respectfully submit, while not minimizing the seriousness of the overall offense that the guidelines do in fact overstate his involvement in the offense and as such request that a sentence to the 60 month mandatory minimum here is appropriate and fair.

### CONCLUSION

Jeffrey is truly remorseful for his criminal conduct.  He asks the Court to consider this conduct as an aberration in an otherwise law-abiding and family-centered life. The PSR demonstrates that Jeffrey is a person of good character who does not pose any danger to children or adults. Moreover, the PSR demonstrates that Jeffrey's actions that led to his plea of guilty are the only example of criminal conduct in an otherwise law-abiding life.

In sum, Jeffrey's behavior is not the result of any violent or sadistic tendencies towards any member of the community, much less children. To the contrary, his behavior was merely the result of inappropriate curiosity. There is no indication that he has ever, or would ever, act on this curiosity.

Given Mr. Francois' lack of criminal history, lack of potential towards recidivism and extensive family support, a sentence below the Advisory Guidelines range is clearly warranted. Accordingly, Jeffrey respectfully requests that the Court sentence him to 60 months incarceration, which is the statutory minimum term of incarceration.

                                        Respectfully Submitted,

                                        _____
                                        Joseph R. Conway, Esq.

cc: AUSA Alan Bode

11